IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

FORT SMITH DIVISION

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Oct 29, 2026
OFFICE OF THE CLERK

AMANDA LYNN VALLE and ZACHARIAH JACOB VALLE, Plaintiffs,

v.

EQUIFAX INFORMATION SERVICES LLC, Defendant.

Case No. 2:26-cv-02144-DCF

# FIRST AMENDED COMPLAINT AND JURY DEMAND

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Amanda Lynn Valle and Zachariah Jacob Valle are natural persons proceeding without counsel. They formerly resided in the Western District of Arkansas during relevant events and now reside in Washington. Each Plaintiff asserts claims concerning only that Plaintiff's consumer file, disputes, and injuries.

2. Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

3. This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b) and 1681i. Jurisdiction exists under 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391 because substantial events giving rise to the claims occurred in this District.

## DISPUTES AND EQUIFAX RESPONSES

4. Equifax maintained separate consumer files for Amanda and Zachariah. Amanda's file contained Ally Financial, JPMorgan Chase Bank, and First Interstate Bank/Frost-Arnett tradelines. Zachariah's file contained Ally Financial and Snap-on Credit LLC tradelines.

5. In September 2025, Plaintiffs sent separate written disputes to Equifax. Amanda disputed Ally account ending 5713, Chase account ending 4774, and First Interstate Bank reporting. Zachariah disputed Ally

account ending 5713 and Snap-on Credit reporting. They sent follow-up correspondence in approximately October and November 2025.

6. Amanda's September 20, 2025 Ally dispute packet included written objections and materials challenging the reported deficiency following repossession and requesting underlying sale and accounting information. Plaintiffs do not allege that every document sent directly to Ally was necessarily sent to Equifax, or that an unanswered demand automatically discharged the debt.

7. Equifax issued Amanda an Ally-related investigation communication dated July 29, 2025. In a later October 4, 2025 letter, Equifax stated that it could not locate Amanda's file based on information accompanying a different submission and requested identifying documents. Amanda supplied additional identity information. Some Equifax correspondence used Amanda's former surname Brown.

8. Plaintiffs contend they did not receive substantive reinvestigation results addressing each of their disputed accounts. They received Ally-related communications, but do not recall receiving results for Chase, First Interstate, or Snap-on. They learned of later deletions by reviewing their files rather than receiving corresponding deletion notices. Plaintiffs do not allege that every request for identification was inherently unreasonable.

9. First Interstate Bank was later deleted from Amanda's Equifax file after the bank requested deletion, and Snap-on was deleted from Zachariah's file after Snap-on requested deletion. Plaintiffs do not contend that Equifax delayed those requested deletions or that deletion alone proves earlier inaccuracy or an FCRA violation.

## ALLY FINANCIAL — AMANDA AND ZACHARIAH

10. Equifax reported the joint Ally Financial automobile account ending 5713, associated with a 2018 Subaru Outback, as charged off with an approximately $12,862 balance. Equifax identified May 12, 2023 as the date of first delinquency. The report displayed a notation that the consumer disputes the account information.

11. Ally's contract and payment records show a May 11, 2023 installment for which no corresponding payment appears in the supplied ledger. Ally's June 24, 2023 letter identified overdue payments and

offered an opportunity to cure by July 8, 2023. Plaintiffs therefore do not allege that a cure deadline in July, standing alone, disproves the May 12 first-delinquency date.

12. Amanda's Equifax account-history display shows May 2023 with a paid-on-time symbol, June 2023 as 60 days late, and July 2023 as 90 days late, while separately displaying May 12, 2023 as the first-delinquency date. Ally's June 26, 2025 correspondence described one 30-day and one 60-day late-payment occurrence before repossession. Amanda contends that the monthly payment presentation warrants comparison with the original payment records to determine whether it inaccurately or misleadingly describes May 2023. Plaintiffs do not assert that the display alone conclusively establishes a reporting error.

13. Ally repossessed and sold the vehicle in 2023. Ally's August 18, 2023 deficiency statement calculated a claimed deficiency of $12,862.79. Plaintiffs contend they did not receive the pre-sale or post-sale notices at the time and separately dispute notice compliance and the enforceability of the deficiency in arbitration. They do not claim that Equifax's approximately $12,862 balance is demonstrably arithmetically incorrect or that the pending arbitration itself establishes an FCRA inaccuracy.

14. Plaintiffs challenged the accuracy and completeness of Ally reporting in their Equifax disputes. They contend that Equifax's responses did not meaningfully explain whether the specific materials submitted were transmitted to Ally or evaluated. They seek to establish the nature of Equifax's actual reinvestigation through evidence. Neither Plaintiff alleges that Equifax was required to adjudicate disputed state-law repossession rights.

## FIRST INTERSTATE BANK / FROST-ARNETT — AMANDA

15. Equifax displayed March 26, 2025 as the opening date for Amanda's First Interstate Bank account. First Interstate Bank's underlying records identify September 17, 2019 as the account-opening date. The dates differ by more than five years. Amanda alleges the displayed March 2025 opening date was factually inaccurate and could materially misrepresent the age of the account.

16. Amanda disputed this tradeline with Equifax in 2025. The original opening date was an objectively verifiable fact available from the account records. Amanda contends Equifax did not provide her with a substantive result resolving this discrepancy before the tradeline was deleted.

17. The tradeline was later deleted following the bank's deletion request. Amanda does not allege continued reporting after deletion. She seeks relief only for an actionable failure occurring before deletion and injury caused by that failure, if established.

JPMORGAN CHASE — AMANDA

18. Equifax reported May 19, 2023 as the opening date of Amanda Lynn Valle's JPMorgan Chase account ending 4774. Chase's internal account records contain a May 19, 2019 date associated with that account. Amanda maintains that the account was originally opened in 2019 and that Equifax's reported opening date is four years later than the actual opening date.

19. Amanda alleges that reporting 2023 as the opening date of an account opened in 2019 materially understates the age of the account. The correct opening date is an objectively verifiable historical fact that can be determined from Chase's original account records. Amanda recognizes that the meaning of the date fields in those records must be established.

20. Equifax displayed September 9, 2024 as the first-delinquency date. Chase statements show no past-due amount on the July 13, 2024 statement and a $35 past-due amount on the August 13, 2024 statement. Amanda does not recall curing that delinquency. She disputes whether September 9 accurately identifies the start of the continuous delinquency preceding charge-off, subject to verification against the complete payment history.

21. Amanda disputed Chase reporting with Equifax. She contends she did not receive a substantive reinvestigation result resolving the disputed dates. Chase statements also show approximately $1,268.44 outstanding in 2025; Amanda does not allege that Equifax's displayed $1,268 balance is mathematically false.

SNAP-ON CREDIT — ZACHARIAH

22. Zachariah disputed a Snap-on Credit LLC tradeline appearing in his Equifax consumer file. The underlying agreement characterized the purchase of tools as business-purpose. Zachariah acquired tools for work and disputes the accuracy and characterization of information appearing on his consumer file.

23. Snap-on later requested deletion, and Equifax removed the tradeline. Zachariah does not allege that the business-purpose designation automatically barred all consumer reporting, that deletion itself

establishes an inaccurate reported field, or that Equifax failed to act promptly on Snap-on's deletion request.

24. Zachariah contends that he did not receive a substantive Equifax reinvestigation result explaining the disposition of his Snap-on dispute. His claim is limited to any statutory failure that can be established from the dispute, Equifax's response, and resulting injury.

COUNT I — REINVESTIGATION, 15 U.S.C. § 1681i

25. Plaintiffs incorporate paragraphs 1–24. Each Plaintiff submitted written disputes identifying particular tradelines on that Plaintiff's own consumer file.

26. Amanda alleges that the First Interstate account-opening date was objectively inaccurate and that she notified Equifax of the disputed tradeline. She further alleges specific, potentially verifiable discrepancies in the Chase account-opening and delinquency dates and the Ally monthly-history presentation. Plaintiffs seek to establish whether these specific discrepancies were included in the information Equifax actually received and whether Equifax's reinvestigation was reasonable in light of that information.

27. Plaintiffs allege that Equifax did not furnish them substantive results for certain identified disputes and that its handling of identity documentation and account-specific submissions impaired their ability to obtain an explanation and correction. To the extent Equifax completed reinvestigations, Plaintiffs contend the adequacy and communication of the results are disputed factual matters.

28. Plaintiffs allege negligent noncompliance with § 1681i to the extent the evidence establishes adequate notice of materially inaccurate or incomplete information, an unreasonable reinvestigation or failure to provide required results, and injury caused by that violation. They seek willfulness damages only if the evidence establishes a knowing or reckless violation, rather than merely an unfavorable dispute outcome.

COUNT II — REASONABLE PROCEDURES, 15 U.S.C. § 1681e(b)

29. Plaintiffs incorporate paragraphs 1–28. Amanda identifies the objectively conflicting First Interstate opening dates and disputes the Chase dates and Ally payment-history presentation described above.

30. To the extent Equifax prepared and furnished a consumer report containing materially inaccurate or misleading information about Amanda, she alleges a failure to follow reasonable procedures to assure

maximum possible accuracy. Plaintiffs presently cannot identify a specific third-party recipient of such an Equifax report and do not allege that a credit denial attributed to TransUnion was caused by Equifax.

31. Zachariah asserts a § 1681e(b) claim only to the extent discovery establishes that Equifax prepared and furnished a materially inaccurate consumer report concerning his own accounts and that the inaccuracy caused a legally cognizable injury. He does not rely on deletion alone as proof of this claim.

INJURY, CAUSATION, AND DAMAGES

32. Both Plaintiffs personally reviewed their Equifax files, prepared disputes, obtained supporting account records, responded to requests for identification, and repeatedly sought clarification of their credit information. They experienced anxiety, interrupted sleep, and worry that their disputed credit histories would prevent future housing and vehicle financing. They contend the unresolved disputes and repeated requests for documentation worsened that distress.

33. Plaintiffs do not allege that they submitted and were denied a specific credit application because of an Equifax report, or that generalized poor credit standing alone establishes damages against Equifax. Each seeks only damages that can be causally linked to an actionable violation affecting that Plaintiff.

34. Amanda's First Interstate opening-date discrepancy and the unresolved Chase and Ally issues caused her particular concern because they appeared in her own consumer file. Zachariah experienced concern regarding the Ally and Snap-on entries in his file. The extent to which each claimed injury resulted from an FCRA violation, rather than from an underlying debt or unrelated reporting, is an issue for proof.

35. Plaintiffs seek actual damages under 15 U.S.C. § 1681o for negligent noncompliance, if proved. They seek statutory and punitive damages under 15 U.S.C. § 1681n only if willful noncompliance is proved. Plaintiffs do not assert willfulness merely because Equifax disagreed with a dispute.

PRAYER FOR RELIEF

36. WHEREFORE, Plaintiffs request judgment for actual damages proximately caused by proven violations; statutory and punitive damages where authorized and supported by proof of willfulness; taxable costs and other relief authorized by law; and a jury trial on all issues triable by jury.

Respectfully submitted:

Amanda Lynn Valle, Plaintiff pro se

P.O. Box 1112, Newport, WA 99156

Zachariah Jacob Valle, Plaintiff pro se

P.O. Box 1112, Newport, WA 99156

Date: 10/29/26

CERTIFICATE OF SERVICE

We certify that on October 29, 2026, a true and correct copy of this First Amended Complaint was served upon counsel for Defendant by email and United States Postal Service (USPS) mail.

Ralph D. Scott III

Lax, Vaughan, Fortson, Rowe & Threet, P.A.

11300 Cantrell Road, Suite 201

Little Rock, AR 72212

tscott@laxvaughan.com

Amanda Lynn Valle

Zachariah Jacob Valle